IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JEFF SPROUL,

                                        Plaintiff,

        v.                                              Civil Action No.
                                                        9:05-CV-0075 (LEK/DEP)
GLENN S. GOORD, *et al.*,

                                        Defendants.

_____

APPEARANCES:                                    OF COUNSEL:

FOR PLAINTIFF:

JEFF SPROUL, *pro se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO                            SENTA B. SIUDA, ESQ.
Attorney General of the State of New York       Assistant Attorney General
Office of the Attorney General
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____ REPORT AND RECOMMENDATION

        Plaintiff Jeff Sproul, who at one time was a New York State prison

inmate but is now in the custody of Pennsylvania authorities, has

commenced this *pro se* civil rights action against Glenn Goord, formerly

the Commissioner of the New York State Department of Correctional

Services ("DOCS"), and three other DOCS employees pursuant to 42

U.S.C. § 1983, alleging deprivation of his constitutional rights.  In his

complaint, as amended, plaintiff alleges that he was deprived of his First

Amendment right to exercise freely his chosen religion when defendants

withheld a religiously significant meal and instead provided him with bread

and cabbage on one, isolated occasion.

Currently pending before the court is a motion by the defendants

seeking dismissal of plaintiff's claims on a variety of grounds including,

*inter alia,* based upon the lack of their personal involvement, plaintiff's

failure to state a legally cognizable free exercise claim, and qualified

immunity.  For the reasons set forth below, I recommend that defendants'

motion be granted.

I.      BACKGROUND

At all times relevant to his claims the plaintiff was an inmate

entrusted to the custody of the DOCS, and confined within the Upstate

Correctional Facility ("Upstate").  Amended Complaint (Dkt. No. 6) ¶ 2.

Beginning in or about October of 2004, while at Upstate, the plaintiff, who

subscribes to Islamic religious tenets, participated in observance of the

Islamic holy month of Ramadan by fasting each day from sunrise until sundown.  Complaint (Dkt. No. 1) ¶¶ 6, 7.  Muslim inmates at Upstate observing Ramadan were apparently identified by placement of tags on their cell doors, *see* Defendants' Motion (Dkt. No. 52-4) Exh. B at 1 (unnumbered), and received religious alternative meals during their fasting period, which ended on or about October 31, 2004.  *Id.* Exh. A at 36-37. The close of Ramadan is known as the Eid ul Fitr holiday, and is typically celebrated by consumption of a sweet breakfast comprised of two orange juices, two coffee cakes, cold cereal, two milks, and hot coffee, followed later by a feast meal.  Complaint (Dkt. No. 1) ¶ 7; *see also Ford v. McGinnis*, 352 F.3d 582, 582 (2d Cir. 2003).

As a result of a Tier III disciplinary hearing conducted on or about November 19, 2004, the plaintiff, who appears to have already been in disciplinary special housing unit ("SHU") confinement at the time, was placed on a restricted diet for a period of ten days as a penalty for having violated prison rules, resulting in his being served meals each consisting of a loaf of dry bread accompanied by a cup of cabbage during that period.[1]  The hearing officer's determination leading to the imposition of

---

[1]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments

3

the restrictive diet, however, was overturned on November 22, 2004, on appeal to the facility superintendent, defendant Robert K. Woods, and plaintiff was ordered immediately restored to full meal status.  Defendants' Motion (Dkt. No. 52-4) Exh. A at 33-34.

Two days later, on November 24, 2004, Islamic inmates at Upstate celebrating Ramadan were scheduled to receive their Eid ul Fitr holiday meals, marking the close of Ramadan.  Complaint (Dkt. No. 1) ¶ 7. Despite Superintendent Woods' reversal and restoration of Sproul to full meal status, however, defendants D. Cagne and C.O. Bouchey nonetheless served the plaintiff his restricted, solid loaf dietary meal instead of the celebratory meal.[2]  Defendants' Motion (Dkt. No. 52-4) Exh. B at 1.

Plaintiff filed a formal grievance regarding the denial of the Eid ul Fitr meal to the clerk of the facility's Inmate Grievance Resolution Committee

---

such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU").  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

[2]    During his deposition plaintiff was evasive and vague as to what meal he was denied, and whether it was the fast-ending breakfast, the actual feast meal, or both.  *See* Defendants' Motion (Dkt. No. 52-4) Exh. A at 35-42, 45-46, 52-53.

("IGRC") on November 30, 2004.[3]   Defendants' Motion (Dkt. No. 52-4)

Exh. B at 1-2.  The grievance was denied by Upstate's grievance

coordinator on December 22, 2004, based upon a finding that there were

no log entries reflecting that plaintiff had refused his "feed-up."  *Id.* at 3.

That grievance denial was later upheld on appeal to defendant Woods, the

superintendent at Upstate, on January 10, 2005.  *Id.* at 6.

Plaintiff appealed the matter further to the Central Office Review

Committee ("CORC") on or about January 19, 2005.  Defendants' Motion

(Dkt. No. 52-4) Exh. B at 7.  Upon full consideration of the entire

grievance, the CORC unanimously denied plaintiff's request on February

9, 2005, reiterating the local facility and finding that prison records failed to

indicate plaintiff's refusal of his "feed-up."  *Id.* at 10.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on January 21, 2005, and

subsequently filed an amended complaint on February 10, 2005.  Dkt.

Nos. 1, 6.  Named as defendants in plaintiff's complaint, as amended, are

former Commissioner Goord; Robert K. Woods, the Superintendent at

---

[3]       Plaintiff's original grievance contained two distinct prongs, alleging that 1)
he was denied the Eid ul Fitr meal; and, 2) certain of his property was not returned to
him when his Level 2 privileges were reinstated.  Defendants' Motion (Dkt. No. 52-4),
Exh. B at 1.  The only issue before this court concerns the denial of the Eid ul Fitr meal.

Upstate; and D. Cagne and C. O. Bouchey, two correctional officers employed by the DOCS and stationed at that facility.  Amended Complaint (Dkt. No. 6) ¶ 3.  Plaintiff's complaint, as amended, alleges the denial by prison officials of his right to free exercise of his religious beliefs, and additionally asserts claims of "gross negligence," "cruel and unusual punishment" and "deliberate indifference."  *Id.* ¶ 7.

Issue was joined on August 9, 2005 by the filing of an answer on behalf of defendants Goord, Woods and Bouchey.  Dkt. No. 29.  It was noted in that answer that up until the time of its filing there was no record of service of the summons and complaint in the action upon the fourth named defendant, Correctional Officer D. Cagne.  *See* Answer (Dkt. No. 29) at 1 n.1.

On September 28, 2006, following the issuance of a scheduling order and pretrial discovery which, *inter alia,* included the taking of plaintiff's deposition, the three answering defendants filed a motion for summary judgment seeking dismissal of plaintiff's complaint.  Dkt. No. 52. In their motion defendants have raised several issues, arguing that 1) dismissal of plaintiff's claims as against defendant Cagne is warranted, based upon the fact that he has not yet been served; 2) plaintiff's

complaint should be dismissed based upon his failure to fully exhaust available administrative remedies; 3) the defendants named in plaintiff's complaint were not personally involved in the constitutional violations alleged; 4) plaintiff's complaint does not raise a cognizable free exercise claim, since he alleges only the inadvertent failure on one occasion to provide him with a meal appropriate to his religious beliefs; 5) plaintiff is not entitled to compensatory damages in light of his failure to plead and prove the existence of physical injury; and 6) in any event, the defendants are entitled to qualified immunity.  *See id.*  Defendants' motion, to which plaintiff has not responded, is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    <u>DISCUSSION</u>

     A.    <u>Summary Judgment Standard</u>

     Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986) (citations omitted); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

8

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

9

B.    Legal Significance of Plaintiff's Failure to Respond

Confronted with a motion by the defendants seeking dismissal of his complaint, plaintiff has not provided the court with the benefit of any argument as to why that motion should not be granted.  Before turning to the merits of defendants' motion, I must address the plaintiff's failure to respond to that motion and determine what, if any, consequences should result from that omission.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  While recognizing that *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, *see Jemzura v. Pub. Serv. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.), courts in this district have found it appropriate to grant a dispositive motion pursuant to Local Rule 7.1(b)(3) based upon a *pro se* plaintiff's failure to respond.  *Robinson v. Delgado*, No. 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. & Hurd, M.J.);

*Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at *1 (N.D.N.Y.

Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980 F. Supp.

106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can be seen by

the face of Local Rule 7.1(b)(3), however, before summary judgment can

be granted in this instance, even in the absence of opposition, the court

must review the motion to determine whether it is facially meritorious.  *See*

*Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 231-

32 (N.D.N.Y. 2001) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542,

545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a plaintiff's failure to properly oppose a defendant's motion

does not assure that the motion, however lacking in merit, will be granted,

that failure is not without consequences.  By opting not to submit papers in

opposition to his motion, plaintiff has left the facts set forth in defendant's

Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this district have

found it entirely appropriate to enforce Local Rule 7.1(a)(3) and its

predecessor, Local Rule 7.1(f), by deeming facts set forth in a statement

of material facts not in dispute to have been admitted based upon an

opposing party's failure to properly respond to that statement.[4]  *See*, *e.g.*,

---

[4]      Local Rule 7.1(a)(3) provides that, "[a]ny facts set forth in the Statement
of Material Facts shall be deemed admitted unless specifically controverted by the

11

*Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that the this longstanding practice be followed and that, when reviewing defendant's motion for facial sufficiency, notwithstanding plaintiff's *pro se* status, the court accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted in light of plaintiff's failure to respond to that statement.

C.    Failure to Serve Defendant Cagne

In their motion defendants have urged dismissal of plaintiff's claims against defendant Cagne, based upon the fact that he has neither been served nor voluntarily appeared in the action.  That request is bottomed principally upon the service requirement imposed by Rule 4(m) of the Federal Rules of Civil Procedure.

Rule 4(m) authorizes dismissal where a summons and complaint is not served within 120 days after filing of the complaint, absent a showing

opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3) (emphasis omitted).

12

of good cause.[5]  Fed. R. Civ. P. 4(m); *Shuster v. Nassau County,* No. 96 Civ. 3635, 1999 WL 9847, at *1 (S.D.N.Y. Jan. 11, 1999).  The 120-day period for service of a summons and complaint by a plaintiff under Fed. R. Civ. P. 4(m) applies to *pro se* plaintiffs as well as those litigants represented by counsel.  *Romand v. Zimmerman,* 881 F. Supp. 806, 809 (N.D.N.Y. 1995) (McAvoy, C.J.).

The record in this case does not include a return of service with regard to defendant Cagne, nor does it provide any other indication that he has been served with the summons and complaint or waived the service requirement and voluntarily appeared in the action.  The court thus has yet to acquire jurisdiction over him and accordingly, given the passage of more than 120 days since issuance of the summons, plaintiff's complaint should be dismissed as against that defendant.[6]  *See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 709 F. Supp.

---

[5]      That period is further restricted by the local rules of this court, which require that service be effected within sixty days.  *See* N.D.N.Y.L.R. 4.1(b).

[6]      According to the court's records, it was only when plaintiff filed his amended complaint on February 10, 2005 that defendant Cagne was added as a party. A summons was issued as to defendant Cagne on March 23, 2005, but was later returned on June 27, 2005 as unexecuted with an indication that the United States Marshals Service was unable to locate defendant Cagne for proper service of process, based upon information from a clerk at the Upstate Correctional Facility indicating that he "is not recognized through our personnel office as a current or former employee." Dkt. No. 22 at 2.

1279, 1282 (S.D.N.Y. 1989) (citing *Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S. Ct. 242, 245-46 (1946)) (court lacks jurisdiction until defendants properly served with summons and complaint).

The Second Circuit has counseled courts to proceed cautiously before dismissing a claim on the basis of lack of service within the requisite 120 day period, particularly in an instance where the plaintiff has not been apprised of the deficiency and afforded an adequate opportunity to cure it or to establish good cause for extending the time of service. *Thompson v. Maldonado*, 309 F.3d 107, 110 (2d Cir. 2002). In this case, a period of more than two years has elapsed since the issuance of the summons in question, without any effort on the part of plaintiff to rectify the situation. Over that time the plaintiff, who is or should be keenly aware that defendant Cagne has yet to be served, has taken no action to ensure that service upon Cagne is effectuated. *See* Defendants' Motion (Dkt. No. 52-4) Exh. A at 25-26. Accordingly, I recommend dismissal of plaintiff's claims against defendant Cagne on this basis.

   D.   <u>Exhaustion of Administrative Remedies</u>

In support of their summary judgment motion, defendants contend

that by not both filing a proper grievance regarding the incident now complained of, and pursuing it through the CORC appeal process, plaintiff has not fulfilled his obligation to properly exhaust administrative remedies prior to bringing this action, and that his complaint is therefore subject to dismissal.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]"  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* __ U.S. __, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual

purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record."  *Jones v. Bock,* __ U.S. __, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the Department of Correctional Services ("DOCS"), and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within

twenty-one days of the incident.[7]  7 N.Y.C.R.R. § 701.5(a).  The IGRC,

which is comprised of inmates and facility employees, then issues a

determination regarding the grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an

appeal is filed, the superintendent of the facility next reviews the IGRC's

determination and issues a decision.  *Id.* § 701.5(c).  The third level of the

process affords the inmate the right to appeal the superintendent's ruling

to the Central Office Review Committee ("CORC"), which makes the final

administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a

basis to excuse non-compliance with this prescribed process, only upon

exhaustion of these three levels of review may a prisoner seek relief

pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F.

Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*,

No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

From the record now before the court, it is difficult to understand the

basis for defendants' contention that plaintiff failed to exhaust available

internal remedies before commencing this action.  The record contains

materials reflecting the filing of a grievance, designated as Grievance No.

UST-22103-04, in which plaintiff complained about both being deprived of

---

[7]     The IGP supervisor may waive the grievance timeliness requirement due
to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

his religious feast meal and allegedly having lost personal belongings while at Upstate.[8]  Defendants' Motion  (Dkt. No. 52-4) Exh. B.  The record also reflects that plaintiff pursued that grievance up through the CORC, which upheld the determination rendered at the facility level.  *See id.* While there may be some question as to whether the Eid ul Fitr meal denial was pressed by the plaintiff at every stage of the process, it clearly remained in the picture through the time the CORC rendered its final decision.  I therefore recommend denial of the portion of the defendants' motion seeking dismissal of plaintiff's complaint on procedural exhaustion grounds.

>    E.    Personal Involvement of Defendants Goord, Woods, and
>    Bouchey

In their motion, defendants have requested dismissal of plaintiff's claims against defendants Goord, Woods, and Bouchey based upon the lack of their personal involvement in the violations alleged.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983.

---

[8]    That Grievance No. UST-22103-04 addressed the issue now being raised is apparent from the fact that it is entitled "deprived Ramadan tray-level II items," a title which carried through to the CORC level.  Defendants' Motion (Dkt. No. 52-4) Exh. B.

*Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

### 1.    Defendants Goord and Woods

Plaintiff's complaint asserts liability against defendant Goord, the former DOCS Commissioner, and defendant Woods, the Superintendent at Upstate.  Since neither of those defendants appears to have been directly responsible for menu selections with respect to plaintiff's meals, their liability appears to be predicated upon their supervisory positions.

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of

the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803, at *6 (2d Cir. June 14, 2007); *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Plaintiff's claims against former Commissioner Goord are based purely upon his former position at the DOCS.  During his deposition plaintiff testified to naming Commissioner Goord as a defendant based upon his position, stating ". . . [h]e's the Commissioner.  You're the chief. He's the chief.  He's the head, all right?"  Defendants' Motion (Dkt. No. 52-4) Exh. A at 58.  Standing alone, such an allegation is insufficient to impose personal liability upon the Commissioner.  *Black v. Coughlin,* 76 F. 3d 72, 74 (2d Cir. 1996); *Wright,* 21 F.3d at 501.  During his deposition plaintiff also acknowledged naming Commissioner Goord as a defendant based upon a theory of *respondeat superior.*  Defendants' Motion (Dkt.

20

No. 52-4) Exh. A at 63.  Since there is no *respondeat superior* liability

under section 1983, *see Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir. 2002)

("A supervisor may not be held liable under section 1983 merely because

his subordinate committed a constitutional tort.") (citations omitted), this

too is an insufficient basis for finding Commissioner Goord's liability.

It is true that plaintiff did testify to having written Commissioner

Goord a letter concerning the feast meal denial.  Defendants' Motion (Dkt.

No. 52-4) Exh. A at 60-63.  Under certain circumstances such notice of a

constitutional violation, coupled with inaction, can trigger personal liability.

*Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir. 1989) (citing

*McCann v. Coughlin,* 698 F.2d 112, 125 (2d Cir. 1983)).  In this instance,

however, plaintiff's letter was written after the incident had occurred, and

there is no indication that it was ever answered.  Under these

circumstances, liability for the underlying violation does not attach. *See*

*Woods v. Goord,* No. 97 CIV 5143, 1998 WL 740782, at *6 (S.D.N.Y. Oct.

23, 1998) (receiving letters or complaints does not automatically make a

supervisor liable for the denial of a constitutional right).

The record reflects somewhat more involvement on the part of

Superintendent Woods in the events leading up to the alleged religious

deprivation.  While plaintiff testified during his deposition that in his view defendant Woods did not "do anything wrong," Woods did in effect cause or contribute to the deprivation by failing to properly notify corrections officers at Upstate of his decision reversing the disciplinary penalty.  *See* Defendants' Motion (Dkt. No. 52-4) Exh. A at 63-64.  The record is devoid of any evidence, however, to suggest that defendant Woods intended to deprive plaintiff of his religious feast meal by not communicating the fact of his disciplinary hearing reversal; indeed, the record fails to contain evidence suggesting that defendant Woods attached such significance to his oversight and either realized, or reasonably should have appreciated, that the consequences of that oversight would be the denial of the religious meal.  At best, defendant Woods' failure to provide timely notice to corrections officials of his decision could constitute negligence, which would not expose him to liability under section 1983.  *See*, *e.g.*, *Rucco v. Howard,* No. 91 Civ. 6762, 1993 WL 299296, at *4 (S.D.N.Y. Aug. 4, 1993) (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)).  Under these circumstances, the record now before the court fails to establish a basis on which defendant Woods can be held personally liable for the constitutional violation alleged.  *See Liner v. Goord,* 310 F. Supp. 2d 550,

22

555 (W.D.N.Y. 2004) ("Where a supervisor's involvement in a prisoner's complaint is limited to forwarding of correspondence to appropriate staff, the supervisor has insufficient personal involvement to sustain a § 1983 cause of action.") (listing cases).

    2.   <u>Defendant Bouchey</u>

As is the case with regard to defendant Woods, plaintiff has made specific allegations regarding the involvement of defendant Bouchey in the deprivation claimed in his complaint.  Plaintiff avers that defendant Bouchey deliberately deprived him of a religious meal at the close of Ramadan, instead serving him a meal consistent with his disciplinary loaf diet.  Amended Complaint (Dkt. No. 6) ¶¶ 6, 7.  Plaintiff claims he explained to defendant Bouchey that he had been removed from the restricted diet, to no avail, and that Bouchey nonetheless flatly refused to provide him with his Eid ul Fitr meal.  *Id.* ¶ 7.  Given this set of circumstances, however innocuous defendant Bouchey's actions in simply handing an inmate a tray during meal rounds may seem, I am unable at this juncture to conclude that defendant Bouchey did not participate in the constitutional violation alleged.

F.    Constitutional Right to Religious Meals

While parsed out into three causes of action, plaintiff's amended

complaint in essence asserts a single claim, complaining that he was

deprived of his First Amendment free religious exercise rights when given

a dietary meal instead of a special meal in celebration of the Eid ul Fitr

holiday.[9]  Plaintiff asserts that the defendants unlawfully interfered with the

exercise of his religious beliefs in accordance with his Islamic faith, by

denying him the opportunity to participate in the holiday meal.

The First Amendment to the United States Constitution guarantees

_____

[9]       Although his complaint does not contain such a cause of action, plaintiff's
factual allegations could support a claim under the Religious Land Use and
Institutionalized Persons Act of 2000 ("RLUIPA"), which provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the
> religious exercise of a person residing in or confined to an
> institution . . . . even if the burden results from a rule of
> general applicability, unless the government demonstrates
> that imposition of a burden on that person – 1) is in
> furtherance of a compelling governmental interest; and 2) is
> the least restrictive means of furthering that compelling
> governmental interest.

42 U.S.C. § 2000cc-1(a).  Because the similar principles which inform the analysis of
plaintiff's  free exercise claim are similar to those applicable to the potential RLUIPA
cause of action, although the two claims are analyzed under somewhat different
frameworks, see Salhuddin v. Goord, 467 F.3d 263, 264 (2d Cir. 2006), and in light of
my ultimate finding, as a matter of law, that plaintiff's religious beliefs were not
burdened, much less substantially so, by the actions of the defendants, it is
unnecessary to separately determine whether plaintiff's complaint should be liberally
construed as asserting such a cause of action.

the right to free exercise of religion.[10]  U.S. Const. amend. I; *Cutter v.*

*Wilkinson*, 544 U.S. 709, 719, 125 S. Ct. 2113, 2020 (2005).  As is true

with regard to the First Amendment generally, the free exercise clause

applies to prison inmates, subject to appropriate limiting factors.  *Ford v.*

*McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been

understood to retain some measure of the constitutional protection

afforded by the First Amendment's Free Exercise Clause.") (citing *Pell v.*

*Procunier,* 417 U.S. 817, 822, 94 S. Ct. 2800, 2804 (1974)).  Thus, for

example, under accepted free exercise jurisprudence inmates are

guaranteed the right to participate in congregate religious services under

most circumstances.  *See*, *e.g.*, *Salahuddin v. Coughlin*, 993 F.2d 306,

308 (2d Cir. 1993) (citing cases).

The right of prison inmates to exercise their religious beliefs,

however, is not absolute or unbridled, but is instead subject to valid

penological concerns, including those relating to institutional security.

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404

(1987); *Salahuddin*, 993 F.2d at 308.  A determination of whether the

---

[10]     That amendment provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

refusal to permit attendance at a religious service, for example, has abridged an inmate's constitutional rights hinges upon the balancing of the inmate's First Amendment free exercise right against institutional needs of officials tasked with the increasingly daunting task of operating prison facilities; that determination is "one of reasonableness, taking into account whether the particular [act] affecting [the] constitutional right . . . is 'reasonably related to legitimate penological interests.'" *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)), *cert. denied*, 498 U.S. 951, 111 S. Ct. 372 (1990).

Undeniably, the reach of the First Amendment's free exercise clause extends beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet and participation in religious meals. *McEachin v. McGuinnis,* 357 F.3d 197, 204-05 (2d Cir. 2004); *Ford,* 352 F.3d at 597.  Ordinarily the Eighth Amendment establishes as a constitutional minimum the requirement that inmates be provided with nutritionally adequate meals; provided this threshold is met, prison officials otherwise retain considerable discretion in determining dietary constituents.  *Word v. Croce,* 169 F. Supp. 2d 219,

226 (S.D.N.Y. 2001).  This requirement, however, is augmented by the First Amendment's free exercise clause, which is broad enough to include an inmate's "clearly established" right "to a diet consistent with his or her religious scruples."  *Ford*, 352 F.3d at 597; *see also Bass v. Coughlin*, 976 F.2d 98, 99 (2d Cir. 1992).  "Courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."  *McEachin,* 357 F.3d at 203.  A free exercise claim arising from such a denial brings into focus the tension between the right of prison inmates to freely enjoy and exercise their religious beliefs on the one hand, and the necessity of prison officials to further legitimate penological interests on the other.  *See Benjamin,* 905 F. 2d at 574.

Examination of plaintiff's free exercise claim entails application of a three-part, burden shifting framework.  *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988).  A party asserting a free exercise claim bears the initial burden of establishing that the disputed conduct infringes his or her sincerely held religious beliefs.[11]  *Salahuddin v. Goord,* 467 F.3d 263, 274-

---

[11]     Noting in its decision in *Ford v. McGinnis* a circuit split over whether prisoners must demonstrate that a burden on their religious exercise is substantial in order to establish a free exercise claim, the Second Circuit declined to resolve the issue, instead assuming continued applicability of the substantial burden test.  352 F.3d 582, 592-93 (2d Cir. 2003).  Recent cases from this and other courts suggest that

75 (2d Cir. 2006); *King v. Bennett,* No. 02-CV-349, 2007 WL 1017102, at

*4 (W.D.N.Y. Mar. 30, 2007).  Importantly, in evaluating this factor the

court must be wary of "question[ing] the centrality of particular beliefs or

practices to a faith, or the validity of particular litigant's interpretations of

those creeds[,]" *McEachin,* 357 F.3d at 201 (quoting *Hernandez v. Comm'r*

*of Internal Revenue,* 490 U.S. 680, 699, 109 S. Ct. 2136, 2148-49 (1989)),

and instead may only consider whether the particular plaintiff holds a

belief which is religious in nature.  *Ford,* 352 F.3d at 590; *King,* 2007 WL

1017102, at *4.  Once a plaintiff has made this showing, the burden then

shifts to the defendant to identify a legitimate penological purpose

justifying the decision under scrutiny.[12]  *Salahuddin*, 467 F.3d at 474-75;

*Livingston v. Griffen*, No. 04-CV-00607, 2007 WL 1500382, at *15

(W.D.N.Y. May 21, 2007).  In the event such a penological interest is

articulated, its reasonableness is then subject to analysis under the test

---

the Second Circuit resolved this split in its decision in *Salahuddin v. Goord*, 467 F.3d 263 (2d Cir. 2006) by subscribing to the substantial burden test.  *See, e.g., Livingston v. Griffin,* No. 9:04-CV-00607, 2007 WL 1500382, at *15 (N.D.N.Y. May 21, 2007) (Singleton, J.); *King v. Bennett,* No. 02-CV-349, 2007 WL1017102, at *4 (W.D.N.Y. Mar. 30, 2007).  While harboring some doubt that the Second Circuit has in fact laid the matter to rest, I find it unnecessary to take a stance regarding the issue.

[12]     While this framework is particularly well-suited for analysis of an agency wide or facility policy or practice affecting inmates generally, it applies with equal force to individual decisions such as that involved in this case, which impacts only a single inmate.  *Salahuddin,* 467 F. 3d at 274 n.4.

28

set out by the Supreme Court in *Turner v. Safley,* 482 U.S. 78, 107 S. Ct. 2254 (1987).  *See Giano v. Senkowski,* 54 F.3d 1050, 1054 (2d Cir. 1995); *Livingston,* 2007 WL 1500382, at *15.

    Under *Turner,* the court must determine "whether the governmental objective underlying the regulations at issue is legitimate and neutral, and [whether] the regulations are rationally related to that objective." *Thornburgh v. Abbott*, 490 U.S. 401, 414, 109 S. Ct. 1874, 1882 (1989). The court then asks whether the inmate is afforded adequate alternative means for exercising the right in question.  *Id.* at 417, 109 S. Ct. at 1884. Lastly, the court must examine "the impact that accommodation of the asserted constitutional right will have on others (guards and inmates) in the prison."  *Id.* at 418, 109 S. Ct. 1884.  Decisions rendered since *Turner* have clarified that when applying this test, a court should examine "the existence of alternative means of facilitating exercise of the right that have only a *de minimis* adverse effect on valid penological interests."  *Smith v. Nuttal,* No. 04-CV-0200, 2007 WL837111, at *5  (W.D.N.Y. Mar. 14, 2007) (citing *Salahuddin,* 467 F. 3d at 274).

    In their motion, defendants do not question the genuineness of

plaintiff's Islamic religious beliefs.[13]  The substantive portion of defendants' motion hinges upon the contention that the denial of the Eid ul Fitr meal did not abridge plaintiff's sincerely held religious beliefs.  In support of their contention that this element has not been met, defendants recite excerpts of plaintiff's deposition in which he expressed his disappointment in not having received the fast-ending meal but indicated that it did not impact significantly impact upon his free exercise rights.  Defendants' Motion (Dkt. No. 52-4) Exh. A at 41-42.  As defendants now argue, plaintiff's deposition testimony makes clear that his disappointment over not receiving the disputed meal stems from the hunger which he experienced from fasting and having been placed on the disciplinary loaf diet.  *Id.*  This fact is confirmed by defendants' Local Rule 7.1(a)(3) Statement which alleges, in relevant part, that "[p]laintiff could not articulate any way in which the Eid ul Fitr meal reflected any sincerely held religious beliefs. . . ."  Local Rule 7.1(a)(3) Statement (Dkt. No. 52-3) ¶ 15 (citation omitted).

---

[13]     The Second Circuit had occasion to address this element – the bonafides of a plaintiff's sincerely held religious beliefs – in the context of a religious dietary restriction request made by an inmate, in *Ford*, 352 F.3d 582.  Noting the difficulties inherent in casting upon the judiciary the task of probing the extent of a plaintiff's legitimately held beliefs, the court observed that "[a]n individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are 'sincerely held' and in the individual's 'own scheme of things, religious.'"  *Id.* at 588 (citations omitted).

In light of plaintiff's failure to contest the Local Rule 7.1(a)(3) Statement, and in particular this specific statement, it is established, for purposes of this motion, that the failure to provide Sproul with one meal did not violate his sincerely held religious beliefs.  *Gubitosi v. Kapica,* 154 F.3d 30, 31 n.1 (2d Cir. 1998) (per curium); *McKnight v. Dormitory Auth. of State of N.Y.,* 189 F.R.D. 225, 227 (N.D.N.Y. 1999) (McAvoy, C.J.).  Plaintiff's free exercise cause of action therefore is subject to dismissal as a matter of law.  *See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.,* 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding grant of summary judgment where a "district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because responsive Rule 7.1(a) statement offered only conclusory denials of movant's factual assertions).

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Because plaintiff has failed to take measures to arrange for service of the summons and complaint in this action upon defendant Cagne, I recommend dismissal of plaintiff's claims against him for lack of personal jurisdiction, without prejudice.  I also recommend dismissal of plaintiff's claims against defendants Goord and Woods, based upon the lack of their

personal involvement in the free exercise violation alleged.

Turning to the more substantive portions of defendants' motion, I find that while there is no readily apparent basis to find that plaintiff failed to exhaust available administrative remedies before commencing this action, and thus recommend against dismissal of his complaint on this procedural ground, his religious exercise claim is legally deficient based upon his failure to establish that the defendants' refusal to provide him with the religiously significant Eid ul Fitr meal violated his sincerely held religious beliefs.  Accordingly, I recommend dismissal of plaintiff's religious exercise claims on the merits, and find it unnecessary to address the issue of qualified immunity, offered by defendants as an alternative basis for dismissal of plaintiff's claims against them, as well as  defendants' final argument, seeking a determination that plaintiff is entitled only to nominal damages in the case.

Based upon the foregoing, it is hereby

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 52) dismissing plaintiff's complaint be GRANTED and that plaintiff's complaint be DISMISSED, in its entirety, without prejudice against defendant Cagne, but with prejudice with regard to defendants

Goord, Woods, and Bouchey.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the plaintiff by regular mail, and upon the defendants electronically.


Dated:     August 13,  2007
           Syracuse, NY




David E. Peebles
U.S. Magistrate Judge

33